

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE SEP 1 0 2015

~~Madsen, C.J.~~
CHIEF JUSTICE

This opinion was filed for record
at 8:00 nm on Sept. 10, 2015

Ronald R. Carpenter
Supreme Court Clerk

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| NORTHWEST WHOLESALE, INC., a Washington corporation, <br><br> Plaintiff, <br><br> v. <br><br> PAC ORGANIC FRUIT, LLC, a Washington limited liability company; GREG HOLZMAN, INC., a foreign corporation authorized to do business in the State of Washington; and HAROLD OSTENSON and SHIRLEY OSTENSON, <br><br> Defendants, <br><br> HAROLD OSTENSON and SHIRLEY OSTENSON, on behalf of PAC ORGANIC FRUIT, LLC, a Washington limited liability company, <br><br> Petitioners, <br><br> v. <br><br> GREG HOLZMAN, an individual; TOTAL ORGANIC, LLC, a Washington limited liability company; and GREG HOLZMAN, INC., a foreign corporation authorized to do business in the State of Washington, <br><br> Respondents. | No. 90891-5 <br><br><br> En Banc <br><br><br><br><br> Filed **SEP 1 0 2015** |

MADSEN, C.J.—This case concerns whether a debtor who has filed a voluntary bankruptcy petition may maintain a derivative action on behalf of a limited liability company (LLC), of which the debtor was a former member. The primary inquiry addresses the interplay of federal bankruptcy law and portions of the Washington Limited Liability Company Act (WALLCA), chapter 25.15 RCW, and whether the state provisions are superseded under the circumstances of this case; specifically, whether 11 U.S.C. §§ 541 or 365 preempt RCW 25.15.130(1)(d).[1] We hold that the dissociation provision found in RCW 25.15.130(1)(d) is not preempted by federal bankruptcy law and affirm the dismissal of the former LLC member's derivative claim under the facts of this case.

## FACTS

Washington orchardists Harold and Shirley Ostenson (collectively Ostenson) and California organic fruit broker Greg Holzman (d/b/a Greg Holzman, Inc. (GHI)) formed Pac Organic Fruit LLC (Pac-O) in 1998. GHI held the majority interest and management responsibilities under the LLC's operating agreement. Ostenson was required to rent his local Washington storage and packing facility to Pac-O, to run that facility, and to obtain and pay a loan to improve that facility. The business operated from 1998 through 2004 but collapsed in 2005. During 2005, Pac-O defaulted on its operating line of credit and

---

[1] The legislature amended the WALLCA in May 2015, repealing the provisions discussed herein and reissuing them in a revised but substantively comparable form relevant to the present matter effective January 1, 2016. *See* LAWS OF 2015, ch. 188. All references to the WALLCA (ch. 25.15 RCW) in this opinion are to the version of that act in effect prior to the January 1, 2016 effective date of the noted amendment.

lease payments, Holzman fired Ostenson, and the bank foreclosed on the packing facility. Thereafter, Holzman, acting as Pac-O's agent, executed a demand promissory note in favor of GHI and transferred Pac-O's assets to GHI to satisfy the note.

On January 9, 2007, Ostenson filed a voluntary chapter 11 bankruptcy petition. In May 2007, a creditor of Pac-O, Northwest Wholesale Inc., filed the present suit against Pac-O, Ostenson, and GHI, alleging fraudulent conveyance from Pac-O to GHI. In response, Ostenson filed cross claims and/or third party claims against Pac-O, Holzman, GHI, and Total Organic LLC (another Holzman company). Ostenson's claims against Holzman and his companies (collectively Holzman defendants or HDs) were as a derivative action on behalf of Pac-O.

On January 24, 2011, the trial court dismissed Northwest Wholesale's claims following settlement of same. Thereafter, the only remaining claims were Ostenson's responsive claims against Pac-O (seven counts) and his derivative claim (count VIII) against HDs. Trial commenced on July 11, 2011. On July 13, after Ostenson rested, HDs moved to dismiss count VIII under CR 41(b)(3). HDs argued that under the WALLCA, (1) a plaintiff asserting a derivative action must be a member of the LLC (*see* RCW 25.15.130(1)(d), .370, .375), (2) when Ostenson filed his bankruptcy petition he was dissociated as a member of the LLC (and thus had only the rights of an assignee, i.e. right to share in profits, but no management rights) (*see* RCW 25.15.130(1)(d)(ii), .250(1)-(2)), and (3) as Ostenson had been dissociated from membership in Pac-O by filing bankruptcy, he lacked authority (standing) to bring a derivative action on behalf of

3

Pac-O. Ostenson answered the motion arguing that HDs had consented to the derivative action via a stipulation that was previously entered in the Ostenson's bankruptcy proceeding.[2]

The trial court took the matter under advisement and directed HDs to go forward and present their evidence. HDs presented witnesses over the remainder of that day (July 13) and the next day but did not finish their testimony. The trial court then continued the matter several times. Finally on September 7, 2012, following additional briefing, the trial court granted HDs' CR 41 motion. In its October 3, 2012 written findings and conclusions, the trial court (1) rejected Ostenson's contention that HDs had waived their CR 41 motion by putting on evidence, (2) rejected Ostenson's contention that HDs had consented to the derivative action in the stipulation in Ostenson's bankruptcy proceeding, and (3) ruled that Ostenson relinquished membership in Pac-O with his bankruptcy filing.

On October 15, 2012 Ostenson filed a motion for reconsideration, arguing for the first time that federal bankruptcy law preempts WALLCA regarding dissociation of LLC members upon filing bankruptcy. The trial court denied Ostenson's motion for

---

[2] In making this argument, Ostenson relied on the WALLCA, arguing that the consent exception to the dissociation provision found in RCW 25.15.130(1)(d) applied to bar HDs' challenge to Ostenson's standing to bring the derivative action. Ostenson also argued that "in addition to the RCW [i.e., RCW 25.15.130(1)(d), which provided a consent exception to the dissociation provision], Your Honor, they [(HDs)] should be judicially and equitably estopped" from challenging Ostenson's standing to bring a derivative action. 3 Verbatim Report of Proceeding at 601. Ostenson reasserted those contentions on appeal (consent, judicial estoppel, collateral estoppel, and res judicata), but the Court of Appeals rejected each contention and affirmed the trial court. *See Nw. Wholesale, Inc. v. PAC Organic Fruit, LLC*, 183 Wn. App. 459, 490-93, 334 P.3d 63 (2014), *review granted*, 182 Wn.2d 1009, 343 P.3d 759 (2015). Ostenson abandoned the issues of consent, judicial estoppel, collateral estoppel, and res judicata in his petition for review.

reconsideration on January 23, 2013. Ostenson appealed, and Division Three affirmed, holding that HDs did not waive their CR 41 motion to dismiss, HDs did not consent to Ostenson bringing a derivative action, and federal bankruptcy law governing bankruptcy estates and executory contracts did not preempt WALLCA's dissociation statute. *Nw. Wholesale, Inc. v. PAC Organic Fruit, LLC*, 183 Wn. App. 459, 474-89, 334 P.3d 63 (2014), *review granted*, 182 Wn.2d 1009, 343 P.3d 759 (2015). Ostenson sought and was granted review in this court on only two issues: waiver and preemption.

ANALYSIS

Waiver

Ostenson argues that HDs waived their right to seek dismissal of his derivative claim, based on Ostenson's lack of standing, by presenting defense evidence after the court took HDs' CR 41 motion to dismiss under advisement.[3] Ostenson contends that the trial court's granting HDs' motion and the Court of Appeals affirmance of same are at odds with *Hector v. Martin*, 51 Wn.2d 707, 321 P.2d 555 (1958). That is incorrect. *Hector* stands for the proposition that a defendant waives the right to challenge the sufficiency of the plaintiff's evidence alone by presenting evidence in defense, thereby

_____

[3]CR 41(b)(3) provides:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subsection . . . operates as an adjudication upon the merits.

allowing the court to consider the motion in light of all of the evidence. *Id.* at 709-10 ("[T]he failure of the trial court to rule on such motion before introduction of proof by a defendant, is tantamount to a denial of the motion. . . . Therefore, this case must be viewed in the light of all the evidence."). Here, the question in the motion to dismiss did not turn on the sufficiency of the evidence; the salient facts, the dates of Ostenson's bankruptcy filing and the subsequent filing of his derivative claim, were not in dispute. The motion turned on a legal question—Ostenson's standing to bring the derivative claim in light of RCW 25.15.130(1)(d) (discussed below). And even if sufficiency of the evidence bore on any pertinent question, nothing indicates that the trial court limited itself to considering only Ostenson's evidence.

Further, *Hector* does not address the circumstance here, where the trial court *directed* HDs to "go forward" and put on their evidence. 3 Verbatim Report of Proceeding at 603. Under these circumstances, HDs did not waive their CR 41 motion as Ostenson contends. The trial court did not err in granting the motion to dismiss under these circumstances.[4]

---

[4] *Cf. State v. Eide*, 2 Wn. App. 789, 791, 470 P.2d 220 (1970) (where appellant, at the end of the state's case, started to move to dismiss, but was told by the trial judge that he could do so later without waiving his rights and then testified in his own behalf, "defendant had a right to rely upon the assurance of the trial court that he could introduce evidence without waiving his challenge to the sufficiency of the evidence at the close of the state's case").

Preemption[5]

Ostenson repeats the argument he made below that "[b]oth 11 U.S.C. § 541(c)(1) and 11 U.S.C. § 365(e)(1) invalidate or render unenforceable *ipso facto* bankruptcy clauses." Appellant's Opening Br. at 28; Pet. for Review at 12.[6] We begin by noting the strong presumption against preemption. While the supremacy clause of the United States Constitution provides that United States law is supreme, notwithstanding any contrary state law, *see Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 78, 896 P.2d 682 (1995) (citing U.S. CONST. art. VI, cl. 2), "any consideration of preemption issues 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.'" (Alterations in original) (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992).). Accordingly, this court applies "a 'strong presumption against finding preemption [of State law] in an ambiguous case. . . . State laws are not superseded by federal law unless that is the clear and manifest purpose of Congress.'" *Id.*

---

[5] HDs argued in part to both the trial court and to the Court of Appeals that Ostenson's preemption assertion, which was first raised in his motion for reconsideration, was untimely. The trial court denied Ostenson's motion for reconsideration. On appeal, Division Three rejected HDs' reasserted timeliness argument, stating, "'By bringing a motion for reconsideration under CR 59, a party may preserve an issue for appeal that is closely related to a position previously asserted and does not depend upon new facts.'" *Nw. Wholesale*, 183 Wn. App. at 480 (quoting *River House Dev. Inc. v. Integrus Architecture, PS*, 167 Wn. App. 221, 231, 272 P.3d 289 (2012)). HDs have not raised the timeliness issue in this court, and we express no opinion on the Court of Appeals discussion of timeliness and issue preservation.

[6] Ostenson's arguments regarding the applicability of § 365 have been a moving target. To the Court of Appeals and in his petition for review, Ostenson argued that § 365(e)(1) prohibitions applied to the LLC operating agreement here as an executory contract. In his reply in support of his petition, he stated that the operating agreement was not an executory contract and that § 365 did not apply. But in his supplemental brief, he argues that § 365(e)(1) does apply and raises two new arguments contending that § 365(e)(2)'s exception to § 365(e)(1)'s ipso facto clause prohibitions (discussed below) does not apply here.

(alterations in original) (quoting *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 265, 884 P.2d 592 (1994)). Even if there is an express preemption clause, this court will give it "a 'fair but narrow reading.'" *Id.* at 79 (quoting *Cipollone*, 505 U.S. at 524). With this presumption in mind, we turn to the statutes at issue.

State Law (WALLCA) Provisions

RCW 25.15.375 provides:

> *In a derivative action, the plaintiff must be a member at the time of bringing the action* and:
>     (1) At the time of the transaction of which the plaintiff complains; or
>     (2) The plaintiff's status as a member had devolved upon him or her by operation of law or pursuant to the terms of a limited liability company agreement from a person who was a member at the time of the transaction.

(Emphasis added.)[7] Under RCW 25.15.130(1)(d)(ii), a member of a limited liability company loses his or her membership upon the filing of bankruptcy. The statute provides:

> (1) *A person ceases to be a member of a limited liability company*, and the person or its successor in interest attains the status of an assignee as set forth in RCW 25.15.250(2), *upon the occurrence of one or more of the following events*:
>     . . . .
>     (d) Unless otherwise provided in the limited liability company agreement, or with the written consent of all other members at the time, *the member . . . (ii) files a voluntary petition in bankruptcy.*

(Emphasis added.)

---

[7] See also RCW 25.15.370, which provides:
    A *member* may bring an action in the superior courts in the right of a limited liability company to recover a judgment in its favor if managers or members with authority to do so have refused to bring the action or if an effort to cause those managers or members to bring the action is not likely to succeed.
(Emphasis added.)

Thus, under Washington law, Ostenson forfeited any right to bring a derivative action on behalf of Pac-O when he petitioned for bankruptcy. The LLC agreement did not allow continued membership but conversely ended the bankrupt petitioning as a member in the limited liability company. As an assignee, the dissociated member retains rights to share in profits but loses any management rights. RCW 25.15.250(2).[8] Ostenson argues only that the dissolution provision of RCW 25.15.130(1)(d) is preempted by federal bankruptcy law; to this court he does not otherwise challenge the provisions or effect of the WALLCA.

Federal Bankruptcy Law Provisions

11 U.S.C. § 541 provides in part:

> (a) The *commencement of a case* under . . . this title *creates an estate.* Such estate is comprised of all the following property, wherever located and by whomever held:

> (1) Except as provided in subsections (b)[9] and (c)(2) of this section, *all legal or equitable interests of the debtor in property as of the commencement of the case.*

(Emphasis added.) Section 541(c)(1) provides:

> Except as provided in paragraph (2) of this subsection, *an interest of the debtor in property becomes property of the estate under subsection (a)(1),*

---

[8] RCW 25.15.250(1) and (2)(a) provide in relevant part, "The assignee of a member's limited liability company interest shall have no right to participate in the management of the business and affairs of a limited liability company," and "[a]n assignment entitles the assignee to share in such profits and losses, to receive such distributions, and to receive such allocation of income, gain, loss, deduction, or credit or similar item to which the assignor was entitled, to the extent assigned."

[9] Under § 541(b)(1), the debtor's bankruptcy estate expressly does *not* include "any power that the debtor may exercise solely for the benefit of an entity other than the debtor," which, by definition, would appear to include a derivative claim, the sole purpose of which is to benefit the entity.

(a)(2), or (a)(5) of this section *notwithstanding any provision in* an agreement, transfer instrument, or *applicable nonbankruptcy law—*

> (A) that restricts or conditions transfer of such interest by the debtor; or

> (B) *that is conditioned on* the insolvency or financial condition of the debtor, on the *commencement of a case under this title*, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

(Emphasis added.)

## State Law Determines Property Interest

As can be seen, a bankruptcy filing triggers the creation of a bankruptcy estate into which the debtor's property interest devolves. *See* 11 U.S.C. § 541(a). The threshold question, however, of how a debtor's interest is determined turns on application of state law. *See, e.g., Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979) ("Property interests are created and defined by state law."). As the Ninth Circuit Court of Appeals explained in *In re Pettit*, 217 F.3d 1072, 1078 (9th Cir. 2000):

> Although the question whether an interest claimed by the debtor is "property of the estate" is a federal question to be decided by federal law, bankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case.

*See also Fisher v. Apostolou*, 155 F.3d 876, 880 (7th Cir. 1998) ("The nature of a debtor's interest in property is determined by state law, but the question whether the

10

resulting interest should count as 'property of the estate' for § 541 purposes is an issue of federal law." (citation omitted)).

*In re Farmers Markets, Inc.*, 792 F.2d 1400 (9th Cir. 1986), is instructive. Therein the Ninth Circuit Court of Appeals reversed a bankruptcy court's decision that the debtor's estate would receive liquor licenses unhindered by transfer restrictions imposed by a state statute. *Id.* at 1401-02. In so holding, the court addressed the limits of 11 U.S.C. § 541 and how that provision is to be applied. Noting that the bankruptcy court's decisions rested upon the misinterpretation of § 541, the court opined:

> [T]he [bankruptcy] court read § 541(a)(1) to broaden the definition of the property of the debtor's estate. Regardless of § 541(a)'s scope, reliance upon it is misplaced. That provision merely defines what interests of the debtor are transferred to the estate. It does not address the threshold questions of the existence and scope of the debtor's interest in a given asset. Under [federal bankruptcy law], we resolve these questions by reference to nonbankruptcy law. *Section 541(a)(1) was thus irrelevant to the inquiry.*

*Id.* at 1402 (emphasis added) (citations omitted). The court made clear that the "'bankrupt estate, insofar as it includes liquor licenses, has only the limited value of the licenses encumbered as they may be by the terms of the statutes which create the licenses and provide the conditions of their transfer.'" *Id.* at 1403 (quoting *In re Prof'l Bar Co.*, 537 F.2d 339, 340 (9th Cir. 1976)). The court held, "Because the estate may take no greater interest than that held by the debtor, the estate takes the license subject to the restrictions imposed [by state statute] on the debtor by its transferor." *Id.*; *see also In re S. Side House, LLC*, 474 B.R. 391, 402 (Bankr. E.D.N.Y. 2012) ("'[T]he estate succeeds to no more interest than the debtor had, and the estate takes its interest subject to the

11

conditions under which the debtor held the interest.'" (quoting *In re Depoy*, 29 B.R. 466, 469 (Bankr. N.D. Ind. 1983)).

*Farmers* also explained that the bankruptcy court had misapplied § 541(c)(1)(A):

> [The bankruptcy court] read this provision to invalidate upon the commencement of bankruptcy proceedings all transfer restrictions on property in which the debtor holds an interest. Section 541(c)(1)(A), however, avoids only those restrictions which prevent transfer of the debtor's property to the estate. . . . [B]y its terms § 541(c)(1)(A) applies only to "interest[s] of the debtor in property." . . . Because [the state statute] placed no restrictions on the transfer of their *entire* interests to their respective estates, it does not conflict with § 541(c)(1)(A).

792 F.2d at 1402 (emphasis added). Applying *Farmers* to Ostenson's case, his debtor's bankruptcy estate took his interest as defined, determined, and encumbered according to state law. In other words, Ostenson's interest that devolved to his bankruptcy estate as determined by the above Washington statutes was his interest as an assignee and not as a member of the Pac-O LLC.

The Court of Appeals reached the same conclusion applying *In re Garrison-Ashburn, LC*, 253 B.R. 700, 707 (Bankr. E.D. Va. 2000), which applied a Virginia state law provision comparable to the above noted Washington statutes dissociating an LLC member upon the member's filing a bankruptcy petition. In *Garrison-Ashburn*, an LLC member filed for bankruptcy and then sought to execute a real estate contract on behalf of the LLC. *Id.* at 704. The other members of the LLC disputed the debtor's right to bind the LLC because under Virginia law, a member is dissociated upon filing for bankruptcy. *Id.* at 707. The debtor retained his economic interest—to share in the profits and losses

12

of the LLC—but could no longer participate in management. *Id.* The *Garrison-Ashburn*

court held that § 541(c) did not change this analysis:

> This result does not offend the Congressional intention behind
> Sections 541(c) and 365(c) and (e). These provisions were intended to
> expand the bankruptcy estate to the maximum feasible extent and to
> prevent the loss of valuable assets by the operation of *ipso facto* clauses
> that terminate valuable leases and other rights upon bankruptcy. Here the
> estate received the entire interest of the debtor in [the LLC] including its
> burdens and restrictions. The economic interest, that is the membership
> interest, remains in the estate and is available for the benefit of creditors.
> The enforcement of [debtor's] statutory dissociation does not cause a
> forfeiture of those rights or impair the legal capacity of the company to
> continue in business.

*Id.* at 709.[10] *Garrison-Ashburn* reconciled the application of both state law and the

federal bankruptcy code by recognizing and applying the rule that state law defines the

debtor's interest, including dissociation, then § 541 brings that interest into the debtor's

bankruptcy estate, burdened by whatever state law requires.

---

[10] While *Garrison-Ashburn* has been criticized by some subsequent cases, *see, e.g., In re Klingerman*, 388 B.R. 677, 679 (Bankr. E.D.N.C. 2008), other cases agree with *Garrison-Ashburn*'s approach. For instance, *In re Albright*, 291 B.R. 538, 540 n.7 (Bankr. D. Colo. 2003), observed:
> Where a single member files bankruptcy while the other members of a multi-
> member LLC do not, . . . the bankruptcy estate is only entitled to receive the share
> of profits or other compensation by way of income and the return of the
> contributions to which that member would otherwise be entitled.
Additional cases that follow *Garrison-Ashburn's* approach include *In re Western Asbestos Co.*, 313 B.R. 832, 844 (Bankr. N.D. Cal. 2003) ("The Court views the meaning of 'property,' as used in 11 U.S.C. § 541(c)(1)(B), as something that may be sold or collected to generate funds to be distributed funds to creditors."); *In re A-Z Electronics, LLC*, 350 B.R. 886, 890 n.12 (Bankr. D. Idaho 2006) (citing *Albright* with approval); *Fotouhi v. Mansdorf*, 427 B.R. 798, 802 (Bankr. N.D. Cal. 2010) (partner dissociated upon filing bankruptcy); *Milford Power Co. v. PDC Milford Power, LLC*, 866 A.2d 738, 759-61 (Del. Ch. 2004) (holding that neither § 365 nor § 541 preempted state law provisions that deprive bankrupt members of governance rights).

Ostenson cites to cases that have reached a result different than *Garrison-Ashburn*, but those cases either do not acknowledge or fail to apply *Butner*,[11] or are otherwise distinguishable or not persuasive. For instance, *In re First Protection, Inc.*, 440 B.R. 821, 830 (B.A.P. 9th Cir. 2010), held that under § 541(a) all of the debtor's rights devolved to the estate and into the hands of the trustee, including the right to manage and control the LLC. *Id.* at 830. On the one hand, such holding arguably made practical sense in that the decision addressed a single-member LLC and, thus, there were no other members to manage the LLC if the trustee could not do so, nor were there any other nondebtor members' interests to be considered and protected.[12] However, the court's application of § 541(a) is troubling. The court acknowledged the *Butner* rule—that a debtor's interest is determined by state law—but failed to apply that rule. The court acknowledged that a state statute specifically defined an LLC member's interest as "'a member's share of the profits and losses'" of the LLC and "'the right to receive distributions of [LLC] assets.'" *Id.* at 828-29 (quoting ARIZ. REV. STAT. § 29-601(13)). Nevertheless, the court applied § 541(a)'s language, "all legal or equitable interest" in the bankruptcy estate, broadly to include not just the interest as above defined by state law but also to include management rights. Such expansive use of § 541(a) to *define* a debtor's interest is contrary to the

---

[11] *See In re Klingerman*, 388 B.R. 677, 679 (Bankr. E.D.N.C. 2008) (no mention of *Butner* and no analysis of threshold determination of debtor's interest as determined by state law); *In re LaHood*, 437 B.R. 330 (Bankr. C.D. Ill. 2010) (same); *In re Dixie Mgmt. & Inv., Ltd. Partners*, 474 B.R. 698 (Bankr. W.D. Ark. 2011) (same).

[12] The Ninth Circuit Bankruptcy Appellate Panel in *First Protection* acknowledged the distinction made in *Albright* (quoted above) that a different result would obtain where the LLC member who files a bankruptcy petition belongs to a single member LLC or a multiple member LLC. *See First Prot.*, 440 B.R. at 829 n.13.

Ninth Circuit's analysis in *Farmers*. *See Farmers*, 792 F.2d at 1402 (holding that § 541(a) addresses only the transfer of debtor's interest to the estate and is "irrelevant" as to the threshold determination of the existence and scope of the debtor's interest). As this portion of the *First Protection* decision does not adhere to *Butner*, does not follow Ninth Circuit precedent, and is contrary to the presumption against preemption that this court applies, *see Hue*, 127 Wn.2d at 78, we do not find this portion of *First Protection* persuasive.

Ostensen cites *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993), *abrogated on other grounds by Law v. Siegel*, ___ U.S. ___, 134 S. Ct. 1188, 188 L. Ed. 2d 146 (2014), for the proposition that § 541(a)(1)'s establishment of a bankruptcy estate sweeps broadly to include every conceivable interest of the debtor "future, nonpossessory, contingent, speculative, and derivative." But all examples given therein concern money. *See id.* The availability to the estate of all of the debtor's economic interest is not at issue in this case. Ostenson's interest as an assignee devolved to the estate. Further, *Yonikus* acknowledges *Butner* for the proposition that determination of a debtor's *interest* in property is decided by state law. *See id.* (stating, "The question whether an interest claimed by the debtor is 'property of the estate' is a federal question to be decided by federal law; however, courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case"). *Yonikus* does not assist Ostenson.

Ostenson also relies on *In re Daugherty Construction, Inc.*, 188 B.R. 607 (Bankr. D. Neb. 1995), and *In re Warner*, 480 B.R. 641 (Bankr. N.D. W.Va. 2012), in which the respective bankruptcy courts held that § 541(c)(1) invalidated state statutory and contractual dissolution provisions. In those cases, the debtor's filing bankruptcy resulted in the dissolution of the LLC and the termination of all the debtor's interest therein. *See Daugherty*, 118 B.R. at 609-11 (statutory dissolution upon bankruptcy filing); *Warner*, 480 B.R. at 655-56 (bankruptcy triggering dissolution, liquidation, and distribution of proceeds per operating agreement). Thus, dissolution of the LLC under the state statute or operating agreement in these cases would result in depriving the estate of all of the debtor's interest. That is not the situation here.[13] As explained above, Ostenson's bankruptcy estate took his interest, as determined and encumbered by Washington statutes, as an assignee. By doing so, his economic interest is preserved in his bankruptcy estate and "is available for the benefit of creditors." *Garrison-Ashburn*, 253 B.R. at 709.

In sum, we find that the Court of Appeals properly followed *Garrison-Ashburn*, federal bankruptcy code, and Washington law.[14]

---

[13]No party has argued that Ostenson's bankruptcy filing resulted in dissolution. But the operating agreement provides that "the Company shall dissolve upon . . . the occurrence of any event of Member dissociation provided in the Act . . . unless the business of the Company is continued with the consent of all of the remaining Members within ninety (90) days following such event." Defs.' Ex. 5 (Pac Organic Fruit LLC Agreement, page 13 (Article 8.1)). Presumably, Pac-O continued operating with the consent of the remaining member, GHI.

[14] Two recent cases from Virginia demonstrate the lack of coherence in this area. In *In re Virginia Broadband, LLC*, 498 B.R. 90, 93-94 (Bankr. W.D. Va. 2013), a bankruptcy court addressed application of a state statute that dissociated an LLC member upon becoming a debtor in bankruptcy and thereby transformed the member's interest into that of an assignee with only economic interests. Purporting to rely on *Garrison-Ashburn*, the *Broadband* court held that the state statute in question was an invalid ipso facto provision under § 541(c)(1)(B) and that the

<u>11 U.S.C. § 365</u>

Ostenson contends that "11 U.S.C. § 365(e)(1) [as well 11 U.S.C. § 541(c)(1)]

invalidate or render unenforceable *ipso facto* bankruptcy clauses." Pet. for Review at 12.

The relevant statute, 11 U.S.C. § 365 provides in relevant part:

> (e)(1) Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—
>
> . . . .
> (B) the commencement of a case under this title . . .
>
> . . . .
> (2) Paragraph (1) of this subsection *does not apply* to an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, *if*—
> (A)(i) *applicable law excuses a party*, other than the debtor, to such contract or lease from accepting performance from or rendering performance to the trustee or to an assignee of such contract or lease, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; *and*
> (ii) *such party does not consent* to such assumption or assignment.

(Emphasis added.)[15]

---

debtor's economic and noneconomic interests in the LLC became property of his bankruptcy estate. *Id.* at 96-97. However, in *In re Williams*, 455 B.R. 485 (Bankr. E.D. Va. 2011), another court, applying the same statute and also purporting to apply *Garrison-Ashburn*, came to the opposite conclusion. The *Williams* court held that § 541(c)(1) "clearly controls" and that the two debtors' interests vested in their respective estates, but that such interest was determined by the state statute. Thus, as defined by the state statute, a dissociated member retained only economic rights, and since both LLC members had been dissociated through bankruptcy and no one was left to wind up the affairs of the LLC, the court would appoint a liquidating trustee to do so. *Id.* at 501-02. Such ambiguities support applying a "'strong presumption'" against finding preemption of RCW 25.15.130(1)(d)'s dissociation provision. *Hue*, 127 Wn.2d at 78 (quoting *Progressive*, 125 Wn.2d at 265).

[15] Similarly, § 365(c) provides in part:

Section 365 applies to executory contracts.[16] As *First Protection* explains,

"Generally, the bankruptcy estate automatically succeeds to a debtor's assets. However,

because an executory contract is both a potential asset and a potential liability of the

debtor it is treated differently." 440 B.R. at 830.[17] Notably, "if the operating agreement

is an executory contract . . . § 365 governs the trustee's rights rather than § 541(c)(1). In

---

The *trustee may not assume* or assign *any executory contract* or unexpired lease *of the debtor*, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, *if*—

(1)(A) *applicable law excuses a party*, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; *and*

(B) *such party does not consent* to such assumption or assignment . . . .

(Emphasis added.)

[16] Ostenson argues in his petition that the LLC's operating agreement is an executory contract and thus subject to the ipso facto prohibition in § 365(e)(1), but in his reply he contends that § 365 does not apply. Then he reasserts in his supplemental brief that § 365(e)(1) does apply while raising two new arguments to avoid § 365(e)(2)'s exception to § 365(e)(1)'s prohibition. In any event, as the Court of Appeals held, it ultimately does not matter whether the Pac-O operating agreement qualifies as an executory contract because, even if it does, under the circumstances of Ostenson's case § 365(e)(2) would apply to negate the application of § 365(e)(1)'s prohibition, as explained herein.

[17] Executory contracts do not automatically devolve to the bankruptcy estate.

"The trustee's power to reject those executory contracts which he finds burdensome to the bankrupt's estate is an extension of his power to renounce title to and abandon burdensome property which is already a part of the estate. Because executory contracts . . . involve future liabilities as well as rights, however, an affirmative act of assumption by the trustee is required to bring the property into the estate in order to ensure that the estate is not charged with the liabilities except upon due deliberation. Thus, executory contracts . . . —unlike all other assets—do not vest in the trustee as of the date of the filing of the bankruptcy petition. They vest only upon the trustee's timely and affirmative act of assumption."

*First Prot.*, 440 B.R. at 830 (alterations in original) (quoting *In re Lovitt*, 757 F.2d 1035, 1041 (9th Cir.1985) (citations omitted)).

18

that event, the restrictive provisions under [a state] LLC Act or the operating agreement that affect the transfer of [d]ebtor's rights and interests in [an LLC] may be enforced through operation of § 365[(e)(2)] in some instances." *Id.* at 830-31.

Whether a contract is executory within the meaning of the Bankruptcy Code is a "question of federal law." *Id.* at 831 (citing *In re Alexander*, 670 F.2d 885, 888 (9th Cir.1982)). "A contract is executory only when the 'obligations of both parties are so far unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other.'" *Id.* (quoting *In re Ehmann*, 319 B.R. 200, 204 (Bankr. D. Ariz. 2005)).

Here, the Court of Appeals analyzed the obligations in the Pac-O operating agreement and noted that while they "may suffice to create an executory contract," the court ultimately "need not decide" whether the Pac-O operating agreement is an executory contract because the court otherwise held that "§ 365(e) of the bankruptcy code excuses further performance under the agreement." *Nw. Wholesale*, 183 Wn. App. at 487-88; *see In re Tsiaoushis*, 383 B.R. 616, 620 (Bankr. E.D. Va. 2007) (Mem. Op.) (noting that the "final step" in any analysis of executory contracts under § 365 is the applicability of § 365(e)(2)'s exemption from § 365(e)(1)'s ipso facto prohibition). To address this issue, Division Three applied *Finkelstein v. Security Properties, Inc.*, 76 Wn. App. 733, 888 P.2d 161 (1995). *See Nw. Wholesale*, 183 Wn. App. at 488.

Ostenson asserts that Division Three's reliance on *Finkelstein* was error because that case addresses partnerships and not LLCs. Pet. for Review at 17. But Division

Three's reliance on a partnership case was not improper. *See Tsiaoushis*, 383 B.R. at 618 (noting because LLC's are relatively new statutory creations, "decisions concerning partnership agreements are helpful").[18] Accordingly, Division Three did not err in applying by analogy a partnership case that addressed application of section § 365(e)(2).

In *Finkelstein*, Division One held that a state law provision that dissolved a general partnership upon the filing of bankruptcy by any of the partners was not superseded by § 365(e)(1)'s invalidation of ipso facto provisions. Therein, Finkelstein was a minority partner in two related general partnerships, each of which served as general partners for several limited partnerships. Finkelstein filed for bankruptcy under chapter 11 and later converted to chapter 7. Before the bankruptcy filing, each general partnership agreement provided that the partnership would not dissolve or terminate upon the death, incapacity, or bankruptcy of any partner. After Finkelstein filed bankruptcy, each general partnership then amended its partnership agreement to exclude Finkelstein as a partner. Finkelstein then sued the general partnerships for an accounting and breach of fiduciary duties and brought a derivative action on behalf of several of the limited partnerships. The trial court dismissed Finkelstein's claims on statute of limitations grounds, and Division One affirmed, holding in part that state partnership law was not superseded by federal bankruptcy law, that the partnerships dissolved under state partnership law when Finkelstein bankruptcy case was converted to chapter 7, and that as

---

[18] *See also* Sally S. Neely, *Partnerships and Partners and Limited Liability Companies and Members in Bankruptcy: Proposals for Reform*, 71 AM. BANKR. L.J. 271, 317 (1997) ("[B]ecause of the similarities between LLCs and partnerships in this area of inquiry, the cases [involving partnerships] also provide guidance regarding the appropriate consequences of the bankruptcy of a member or member-manager of a[n] LLC.").

a former partner Finkelstein had no standing to bring breach of fiduciary duty claims or a derivative action on behalf of the limited partnerships. *Finkelstein*, 76 Wn. App. 733.

Relevant here, noting that courts have "'generally assumed that partnership agreements are . . . executory contracts,'" Division One held that "[debtor's] bankruptcy trustee was not free to assume the contract under § 365 because the other partners were not obligated to accept such an assumption." *Id*. at 736-37 (quoting *In re Cutler*, 165 B.R. 275, 279–80 (Bankr. D. Ariz.1994)). This is so because "[p]artnerships are voluntary associations, and partners are not obligated to accept a substitution for their choice of partner." *Id*. at 737. The court additionally held that "[t]he restraint on assumability also makes the deemed rejection provision of § 365[(d)(1)] inapplicable to the partnership agreement. Therefore, § 365(e)'s invalidation of ipso facto provisions does not apply, and state partnership law is not superseded." *Id*. (citation omitted). The *Finkelstein* court relied on a Fifth Circuit case, *In re Phillips*, 966 F.2d 926, 935 n.11 (5th Cir. 1992), which noted that

> [C]ourts which have ruled that § 365(e) supersedes state partnership law have failed to apply § 365(e)(2) to their analysis. Section 365(e) was designed to invalidate bankruptcy termination clauses (ipso facto provisions) in contracts. Section 365(e)(2) clarifies Congress' intention to prevent only private contracts from counteracting the Bankruptcy Code, not to prevent state law, such as partnership law, from determining the status of a partnership.

*Finkelstein*, 76 Wn. App. at 737 n.3. Division One further explained, "Section 365 is clearly not applicable to the executory portion of the partnership contract [i.e., described as management rights and duties] because partnership agreements are purely consensual

21

and the freedom of the partners to associate and dissociate is the heart of partnership law." *Id.* at 738. Accordingly, the *Finkelstein* court held that § 365 was not applicable and did not supersede state partnership law. *Id.*

> The only duties owed to [debtor] after his removal from the partnership were the duties to account and pay to him (or his estate) the value of his share. [Debtor] ceased to be a member of the partnership upon dissolution, and has no rights against the remaining partners for their continuing business. It follows that he has no claims against the remaining partners for any alleged subsequent self-dealing. *For the same reasons, we also affirm the trial court's dismissal of [debtor's] derivative action.*

*Id.* at 740 (emphasis added).

Here, the Court of Appeals sustainably relied on *Finkelstein* in holding that § 365 did not preempt Washington law that removed Ostenson as a member of Pac-O upon his bankruptcy filing. *See Nw. Wholesale*, 183 Wn. App. at 489. The same rights of voluntary association on which the *Finkelstein* decision turned apply equally to LLC membership. *See Daugherty Constr.*, 188 B.R. at 611 ("Like a partnership, members of the LLC have voluntarily associated in a business enterprise and the relationship among members may be personal in character."); *see also* Sally S. Neely, *Partnerships and Partners and Limited Liability Companies and Members in Bankruptcy: Proposals for Reform*, 71 AM. BANKR. L.J. 271, 312 (1997) (same); *First Prot.*, 440 B.R. at 832 (plain language of § 365(c)(1) and § 365(e)(2)(A) makes clear that the provisions are not for the debtor's protection). "These sections [§ 365(c)(1) and § 365(e)(2)(A)] were designed 'to protect non-debtor third parties whose rights may be prejudiced by having a contract performed by an entity other than the one with which they originally contracted.'" *First*

*Prot.*, 440 B.R. at 832 (quoting *In re C.W. Mining Co.*, 422 B.R. 746, 761 (B.A.P. 10th Cir. 2010)). The WALLCA clearly protects the voluntary association rights of nondebtor LLC members. For instance, while RCW 25.15.250 authorizes the assignability of a member's LLC interest "in whole or in part," that statute nevertheless expressly protects the associational interests of the remaining members by providing:

> The assignee of a member's limited liability company interest shall have *no right to participate in the management of the business and affairs of a limited liability company except . . . [u]pon the approval of all of the members of the limited liability company* other than the member assigning his or her limited liability company interest.

RCW 25.15.250(1)(a) (emphasis added). Similarly, RCW 25.15.260, which addresses the right of an assignee to become a member, states in pertinent part, "An assignee of a limited liability company interest *may* become a member *upon . . . [t]he approval of all of the members of the limited liability company* other than the member assigning his or her limited liability company interest." RCW 25.15.260(1)(a) (emphasis added). Given the strong protection of LLC members' voluntary associational interests, comparable to partnerships, the Court of Appeals did not err in applying *Finkelstein* to Ostenson's case and affirming the dismissal of his derivative claim.

Ostenson does not effectively argue otherwise. He cites to *Summit Investment & Development Corp. v. Leroux*, 69 F.3d 608 (1st Cir. 1995) for the proposition that § 541(c)(1) and § 365(e)(1) invalidate or render unenforceable ipso facto bankruptcy clauses. But the *Summit* court addressed only § 365(e) and did not undertake any analysis of § 541. *Id.* at 614 n.8. And while the First Circuit indeed held in *Summit* that

§ 365(e) preempted a Massachusetts statute comparable to RCW 25.15.130(1)(d)(ii), the Ninth Circuit expressly rejected *Summit*'s approach in *In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir.), *cert. dismissed*, 528 U.S. 924 (1999). The Ninth Circuit Court of Appeals noted that under the statute's plain language, while § 365(e)(1) nullifies ipso facto clauses, "§ 365(e)(2)(A) expressly revives 'ipso facto' clauses" under the circumstances noted therein. *Id.* at 753 n.6. The Ninth Circuit held, "[W]here applicable nonbankruptcy law makes an executory contract nonassignable because the identity of the nondebtor party is material, a debtor in possession may not assume the contract absent consent of the nondebtor party." *Id.* at 754-55. As noted, RCW 25.15.250(1)(a) and RCW 25.15.260(1)(a) of the WALLCA require the express approval of the LLC nondebtor members regarding any transfer or assumption of member management rights. To the extent the LLC operating agreement may qualify as an executory contract concerning management, the noted "applicable law excuses a party, other than the debtor [i.e., the nondebtor members], . . . from accepting performance from or rendering performance to . . . an assignee," and "such party [i.e., the nondebtor members have] not consent[ed] to such assumption or assignment." 11 U.S.C. § 365(e)(2). Accordingly, § 365(e)(2)'s exception to § 365(e)(1)'s prohibition of ipso facto provisions applies.[19]

---

[19] Ostenson raises two new issues in his supplemental brief. First, he contends that because his bankruptcy petition was filed under chapter 11 (reorganization), he is a debtor in possession and thus he may be treated as the same entity before and after his bankruptcy filing. Because there will be no assignment of the operating agreement to a different entity, the § 365(e)(2) exception to § 365(e)(1)'s prohibition to ipso facto provisions is not triggered. Second, Ostenson contends that the stipulation entered in his bankruptcy proceeding qualifies as the required consent under § 365(c)(1)(A) and § 365(e)(2) and thus the § 365(e)(2) exception is not triggered. *See* Pet'rs' Suppl. Br. at 17-20. We decline to address Ostenson's newly raised arguments. "Under the

## CONCLUSION

We conclude that HDs did not waive their CR 41 motion to dismiss and that federal bankruptcy law, 11 U.S.C. §§ 541 or 365, does not preempt RCW 25.15.130(1)(d)'s dissociation provision. As to the latter issue, we hold that state law defines what the bankruptcy debtor's interests are and that § 541 brings such interests into the bankruptcy estate, burdened by whatever state law requires. Additionally, if executory contracts are involved, § 365 applies to determine what may be done with such contracts. But here, the express protections of associational rights of nondebtor members found in the WALLCA triggers § 365(e)(2)'s exception, rendering § 365(e)(1)'s prohibition against ipso facto clauses inapplicable. We affirm.

---

Rules of Appellate Procedure, 'the Supreme Court will review only the questions raised in . . . the petition for review and the answer, unless the Supreme Court orders otherwise upon the granting of the . . . petition.'" *Denaxas v. Sandstone Court of Bellevue, LLC*, 148 Wn.2d 654, 671, 63 P.3d 125 (2003) (alterations in original) (quoting RAP 13.7(b)).

_Madsen, C.J._

WE CONCUR:

_Johnson, J._   _Wiggins, J._

_Owens, J._   _González, J._

_Fairhurst, J._   _Gordon McCloud, J._

_Stephens, J._   _Yu, J._