IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JAMES A. ZACHMAN, | § | |
| | § | No. 260, 2020 |
| Plaintiff Below, | § | |
| Appellant/Cross-Appellee, | § | Court Below—Court of |
| | § | Chancery of the State of |
| v. | § | Delaware |
| | § | |
| REAL TIME CLOUD SERVICES | § | C.A. No. 9729-VCG |
| LLC, SANGEETA CHHABRA, and | § | |
| CBS ACCOUNTING PVT. LTD, | § | |
| | § | |
| Defendants Below, Appellees/ | § | |
| Cross-Appellants, | § | |
| | § | |
| and | § | |
| | § | |
| REAL TIME DATA SERVICES, | § | |
| LLC, | § | |
| | § | |
| Intervenor-Defendant Below, | § | |
| Appellee/Cross-Appellant. | § | |

Submitted: February 19, 2021
Decided: April 20, 2021

Before **VALIHURA**, **VAUGHN**, and **MONTGOMERY-REEVES**, Justices.

# **O R D E R**

After consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) The *pro se* appellant, James A. Zachman, challenges a post-trial decision of the Court of Chancery that valued Zachman's interest in Real Time Data

Services, LLC (the "Company") and determined that the Company had not proved its counterclaims for damages. The appellees and the Company have filed a cross-appeal. After careful review of the parties' briefs and the record, we affirm.

### Factual Background[1]

(2) Zachman and Sangeeta Chhabra formed the Company in 2006 to provide QuickBooks hosting services to customers. Chhabra owned the appellee CBS Accounting Private, Limited ("CBS Accounting"), which was based in India and also provided QuickBooks hosting services. Zachman and CBS Accounting were the two members of the Company; Zachman and Chhabra were the Company's managers. Zachman ran the Company's marketing arm, while CBS Accounting provided hosting, technical, and billing support to the Company. As the Company grew, it hired additional employees, and Chhabra started another company, Real Time Data Services Private Limited ("Real Time Data SPL"), to allow the Company to add employees while circumventing certain regulatory strictures in India. Neither Zachman nor Chhabra drew a salary from the Company; instead, they agreed to equally divide the Company's net income.

(3) Disputes arose between Zachman and Chhabra regarding accounting and other matters. By 2012, Zachman and Chhabra each believed that the other was

---

[1] We derive the factual background from the facts found by the Court of Chancery in its post-trial memorandum opinion and indicate where a factual dispute is relevant to the issues raised on appeal.

manipulating the Company's accounts for personal benefit. Zachman controlled the Company's bank accounts in the United States, and Chhabra suspected that he was making illegitimate withdrawals from those accounts and drawing more than his fifty-percent share of the Company's net income. Zachman suspected that Chhabra was inappropriately transferring money to the companies in India, where she could control the funds.

(4) As the relationship deteriorated, Zachman took steps to form a competing company, Cloudvara.com ("Cloudvara"). On May 16, 2012, Chhabra removed Zachman as a manager of the Company, indicating in a Company-wide email that the termination was due to mismanagement of Company funds, Zachman's failure to file the Company's taxes, and the fact that Zachman had filed for personal bankruptcy in 2010. Although the parties disputed whether Chhabra and the other defendants had been aware of Zachman's bankruptcy in 2010, when it occurred, the Court of Chancery found that they were not.

(5) After his termination, Zachman took actions aimed at interfering with the Company's ability to operate in the United States. He also began contacting the Company's customers, warning them against continuing to do business with the Company and soliciting them to do business with his new company, Cloudvara. The Company began to experience high rates of customer attrition.

(6)    As the Company began to lose money, Chhabra migrated the Company's customers to Real Time Cloud Services LLC ("Cloud"), a company that she had formed in 2012.  She also decided to eliminate Zachman's interest in the Company through a merger.  Chhabra determined that the value for Zachman's interest in the Company was $3,487.50, the amount that Zachman had assigned to his interest in his 2010 bankruptcy petition.  Taking the position that Zachman's post-termination actions had caused financial harm to the Company, Chhabra applied the value of Zachman's interest against what she alleged he owed the Company and paid him nothing.

(7)    Zachman initiated this litigation in the Court of Chancery on June 3, 2014; he filed an amended complaint on June 12, 2015.  Zachman asserted claims for breach of contract, breach of fiduciary duty, unjust enrichment, and civil conspiracy arising out of his allegations that Chhabra and CBS Accounting transferred Zachman's or the Company's assets to Cloud, failed to provide Zachman with financial information, and squeezed Zachman out of the Company without paying him fair value.  He also asserted a claim for "discovery" of "books and records" that would enable him to determine the value of his interest in the Company.

(8)    The Company intervened as a defendant.  It asserted various counterclaims against Zachman, including that he tortiously interfered with the Company's contracts and converted Company funds.

4

(9)     In a telephonic ruling on July 28, 2016, the Court of Chancery granted partial summary judgment.  The summary judgment ruling dismissed four of Zachman's five claims, leaving only the claim for breach of fiduciary duty.  The Court of Chancery also held that, under 6 *Del. C.* § 18-304, Zachman "ceased to be a member of the company upon filing bankruptcy in May of 2010" and that the "defendants promptly removed plaintiff or acknowledged his removal by operation of law as a member upon becoming aware of the plaintiff's bankruptcy in May of 2012."[2]  Relying on *Milford Power Company, LLC v. PDC Milford Power, LLC*,[3] the court determined that "while Mr. Zachman did not retain, post-bankruptcy, the same managerial rights that flowed from his membership, he retained certain economic rights."[4]  The court therefore dismissed Zachman's claims that alleged that the defendants wrongfully deprived him of his managerial role before the merger and of his right to vote on the merger.  The court held that Zachman's claim to fair merger consideration would remain for further litigation.  The court dismissed Zachman's claim for "books and records" to determine the fair value of his interest

---

[2] *Zachman v. Real Time Cloud Servs. LLC*, No. 9729-VCG, Docket Entry No. 128, at 6 (Del. Ch. July 28, 2016) [hereinafter SJ Decision].  Title 6, Section 18-304(1)b of the Delaware Code provides that, "[u]nless otherwise provided in a limited liability company agreement, or with the consent of all members," a "person ceases to be a member of a limited liability company" when the member "[f]iles a voluntary petition in bankruptcy."

[3] 866 A.2d 738 (Del. Ch. 2004).

[4] SJ Decision, *supra* note 2, at 7.

as moot because Zachman's right to discovery relating to the remaining claim would be broader than any right to books and records that he might retain.

(10)  After extensive motion practice relating to discovery and other matters, the Court of Chancery held a trial on June 26, 2019.  Following post-trial briefing, the court issued its post-trial decision.[5]  The court held that Company should be valued as of the date of the merger in October 2012, the date used by the defendants' valuation expert, and not as of the date of Zachman's termination in May 2012, the date used by Zachman's expert.[6]  The court also found the defendants' expert's report and testimony more reliable, and therefore used that valuation, with certain adjustments, to determine the value of Zachman's interest.[7]  The court found the defendants' expert's estimates of the Company's growth to be unduly conservative, and therefore adjusted the long-term-growth rate from 2% to 5%.  Applying that adjustment, the court determined that the fair value of Zachman's interest was $173,000.

(11)  The court also held that the Company had not proved its counterclaims for damages.  With respect to the counterclaim for conversion, the court held that two summary charts showing Zachman's alleged overdraws and withdrawals fell short of meeting the Company's burden of proof because the evidence offered did

---

[5] *Zachman v. Real Time Cloud Services, LLC*, 2020 WL 1522840 (Del. Ch. Mar. 31, 2020).
[6] *Id.* at *15.
[7] *Id.* at *16.

6

"not permit the Court to weigh whether these withdrawals and withholdings were tortious; instead, [the Company] essentially asks me to assume wrongdoing and rely on its calculations, for which it provides only cumulative summaries."[8] The court held that the Company had not proved its counterclaim for tortious interference with contract because it had not shown that Zachman caused a breach of any particular contract, and Zachman was free to compete with the Company for customers after his termination.[9]

### *Issues on Appeal*

(12) On appeal, Zachman argues that the Court of Chancery erred by holding that, under 6 *Del. C.* § 18-304, Zachman's membership interest terminated in 2010 when he filed a personal bankruptcy petition, because Section 18-304 is preempted by federal law. We find no basis for reversal of the Court of Chancery's conclusion.

(13) Section 18-304 of the Delaware Limited Liability Company Act provides:

> A person ceases to be a member of a limited liability company upon the happening of any of the following events:
>
> (1) Unless otherwise provided in a limited liability company agreement, or with the consent of all members, a member:
>
> a. Makes an assignment for the benefit of creditors;
>
> b. *Files a voluntary petition in bankruptcy*;

---

[8] *Id.* at *18.
[9] *Id.* at *19.

7

c. Is adjudged a bankrupt or insolvent, or has entered against the member an order for relief, in any bankruptcy or insolvency proceeding;

d. Files a petition or answer seeking for the member any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any statute, law or regulation;

e. Files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against the member in any proceeding of this nature;

f. Seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of the member or of all or any substantial part of the member's properties . . . .[10]

In *Milford Power*, the Court of Chancery held that federal bankruptcy law partially preempts Section 18-304, to the extent that Section 18-304 deprives a member of a limited liability company of the member's economic rights in the company. Specifically, it wrote that "the practical effect of [this] ruling leaves § 18-304 with continued vitality. Essentially, . . . § 18-304 means that a member who files for bankruptcy still ceases to be a member, but becomes an assignee with the economic rights specified in § 18-702(b)."[11]

(14) The Court of Chancery in *Milford Power* engaged in a careful and nuanced preemption analysis and, after careful consideration, we find that reasoning

---

[10] 6 *Del. C.* § 18-304 (emphasis added).
[11] *Milford Power Co., LLC v. PDC Milford Power, LLC*, 866 A.2d 738, 762 (Del. Ch. 2004).

persuasive. Moreover, like the court in *Milford Power*, courts in other jurisdictions have held that statutory *ipso facto* provisions similar to Section 18-304 are not preempted by the Bankruptcy Code to the extent that they divest members who file for bankruptcy of the right to participate in the management of the company but not of their economic rights.[12] We conclude that the Court of Chancery appropriately followed *Milford Power* in this case and determined that Zachman's membership interest, other than his economic interest, terminated in 2010 when he filed a personal bankruptcy petition.

(15) Next, Zachman argues that the Court of Chancery erroneously limited his discovery, which prevented him from effectively responding to the defendants' motion for partial summary judgment. The Company "produced its financial records to Zachman in the form of QuickBooks files," and Zachman "sought to compel the bank records of the Indian companies that provide services to [the Company] so that he can conduct his own reconciliation of the Company's expenses."[13] After

---

[12] *See, e.g.*, *In re Garrison-Ashburn, L.C.*, 253 B.R. 700, 704, 709 (Bankr. E.D. Va. 2000) (holding that, under *ipso facto* provision in Virginia limited liability company statute, a member's filing of a bankruptcy petition "divest[s] the member of all rights as a member to participate in the management or operation of the company," the "only rights remaining are the dissociated member's economic rights," and "[t]his result does not offender the Congressional intention behind Section 541(c) and 365(c) and (e) [of the Bankruptcy Code]"); *Nw. Wholesale, Inc. v. Pac Organic Fruit, LLC*, 357 P.3d 650 (Wash. 2015) (holding that Bankruptcy Code did not preempt *ipso facto* provision in Washington limited liability company statute and that, upon member's filing of bankruptcy petition, the bankruptcy estate acquired the member's economic rights but not his other rights as a member) (citing additional cases).
[13] *Zachman*, 2020 WL 1522840, at *12.

determining that satisfying Zachman's requests would be "incredibly burdensome" and that Zachman had not offered a credible basis to support his belief that the financial records produced by the Company were falsified, the court denied Zachman's request.[14] We find no abuse of discretion in the court's ruling on this issue.[15]

(16) Both Zachman and the cross-appellants take issue with the Court of Chancery's valuation. Zachman argues that the cross-appellants' expert's report (the "Seitz Report") was "unreliable." The cross-appellants argue that the Court of Chancery erred by valuing Zachman's interest using a 5% long-term growth rate instead of a 2% long-term growth rate. We review a Court of Chancery valuation for abuse of discretion and afford significant deference to the court's factual findings unless they are clearly wrong.[16] We defer to the trial court's determination of fair value if it has a reasonable basis in the record and accepted financial principles.[17]

(17) Zachman's conclusory assertion that the Seitz Report was unreliable does not provide a basis for reversal. The Court of Chancery found the Seitz Report to be more reliable than the report provided by Zachman's expert ("Thomas") based on Seitz's testimony; the valuation date he used; the financial records on which the

---

[14] *Id.* at *12-14.

[15] *See Alaska Elec. Pension Fund v. Brown*, 988 A.2d 412, 419 (Del. 2010) ("We review the Court of Chancery's discovery rulings for abuse of discretion.").

[16] *Brigade Leveraged Capital Structures Fund Ltd. v. Stillwater Mining Co.*, 240 A.3d 3, 9 (Del. 2020).

[17] *Id.* at 9-10.

10

respective reports were based; and comparison of the information in the reports with other information, such as the income reported on Zachman's tax returns.[18] We defer to the Court of Chancery's findings.

(18) The cross-appellants argue that the Court of Chancery erred by valuing Zachman's interest by applying a 5% long-term growth rate instead of the 2% long-term growth rate used by Seitz. They contend that (i) applying the 5% growth rate ignored the evidence that the Company's value was eroded for six months leading up to the merger, and (ii) "a 5% growth rate exceeds the expected growth in GNP." The cross-appellants have not shown that the court's application of the 5% growth rate lacked a reasonable basis in the record or violated accepted financial principles. Their own expert, Seitz, used a growth rate based on the long-term growth rate of the United States economy, which he testified ranged from 2% to 5%.[19] The Court of Chancery concluded that Seitz's use of 2% was "unduly conservative" in light of the Company's "early-years hyper-growth,"[20] disagreeing with Seitz that the Company "essentially had no growth potential."[21] The court therefore applied a growth rate of 5%—which corresponds to the high end of the range of growth for

---

[18] *Zachman*, 2020 WL 1522840, at *16-17.
[19] *See Zachman v. Real Time Cloud Servs. LLC*, No. 9729-VCG, Docket Entry No. 258, at 127:18-128:7, 141:8-10 (Del. Ch. June 26, 2019) [hereinafter Trial Transcript] (Seitz testifying that the long-term growth rate of the United States economy is "generally from 2 to 5 percent" and that he selected a rate at the low end of the range).
[20] *Zachman*, 2020 WL 1522840, at *17.
[21] *Id.* at *7.

the economy—instead of the low end of the range, as used by Seitz. Moreover, contrary to the cross-appellants' argument, the court did not ignore the erosion of the Company's value leading up to the merger. The court valued the Company as of October 2012, when the merger occurred, and accepted Seitz's exclusion of lost revenues from customer attrition between Zachman's termination as manager and the time of the merger.[22] We find no basis for reversal.

(19) The cross-appellants also contend that the Court of Chancery erred by determining that the Company had failed to meet its burden of proof on its conversion claim by submitting summary charts of alleged overdrafts that Zachman made of Company funds. They contend that Delaware Rule of Evidence 1006 permits proof of the contents of voluminous documents by use of a summary or chart. The Court of Chancery admitted the charts into evidence, but it concluded that the charts did not satisfy the Company's burden of proof of conversion because the "evidence offered does not permit the Court to weigh whether these withdrawals and withholdings were tortious; instead, Real Time Data essentially asks me to assume wrongdoing and rely on its calculations, for which it provides only cumulative summaries."[23] After reviewing the charts[24] and Chhabra's testimony

---

[22] *Id*. *See also* Trial Transcript, *supra* note 19, at 119:20-123:19 (Seitz testimony regarding lost revenue calculations).
[23] *Zachman*, 2020 WL 1522840, at *18.
[24] Cross-Appellants' Appendix at B526-27.

12

regarding the charts,[25] we agree with the Court of Chancery's conclusion that, although the chart and Chhabra's testimony may be sufficient under D.R.E. 1006 to demonstrate withdrawals that Zachman made, the evidence presented did not satisfy the Company's burden of proving the wrongfulness of the withdrawals.

(20) Finally, the cross-appellants argue that certain adverse inferences that the Court of Chancery made against Zachman were an inadequate remedy for Zachman's discovery violations, including his failure to produce his complete tax returns, his refusal to disclose his contacts with the Company's customers after June 1, 2012, and his refusal to answer multiple questions during his deposition. They assert that the appropriate remedy was dismissal of Zachman's claims. We review a trial court's imposition of a sanction for a discovery violation for abuse of discretion.[26] Although we do not condone Zachman's intransigence and failure to produce court-ordered discovery, after careful consideration, we cannot conclude that the Court of Chancery abused its discretion by adopting adverse inferences against Zachman, rather than dismissal of his claim, as a sanction.

---

[25] Trial Transcript, *supra* note 19, at 39:13-42:2.
[26] *Hoag v. Amex Assurance Co.*, 953 A.2d 713, 717 (Del. 2008).

13

NOW, THEREFORE, IT IS ORDERED that the judgment of the Court of Chancery is AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice